UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | CASE NO. 1:08-CV-02214 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) ) | OPINION AND ORDER |
| **GMRI, INC. d/b/a BAHAMA BREEZE,** | ) ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion of Defendant GMRI, Inc., d/b/a Bahama Breeze, for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the Motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff Equal Employment Opportunity Commission ("E.E.O.C.") filed a Complaint on September 18, 2008, against Defendant GMRI, Inc., d/b/a Bahama Breeze ("Defendant"), under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, alleging the following unlawful employment practices on behalf of a class of current and former employees:

    a.    Referring to and addressing its black employees as "nigger," "Aunt Jemima," "home boy," "stupid nigger," "you people," including several other remarks insulting and stereotypical towards blacks;

    b.    Refusing to afford black employees (aggregated by Defendant in the "Heart of the House" *i.e.* away from customer contact), equal terms, conditions, and privileges of employment afforded to white employees, such as breaks, food, equal application of attendance and tardiness rules, work assignments, and opportunities for advancement within the company;

1

      c.      Retaliating against black employees who complain of harassment by threatening to reduce or actually reducing their work hours;

      d.      Constructively discharging Vatisha Graves for the above-described conduct.

(Complaint, ECF DKT #1 at ¶ 7 and Nature of the Action.)  The action arises from three E.E.O.C. Charges of Discrimination filed by James Vaughn, Vatisha Graves, and Robert Williams.  (*Id.* at ¶ 6.)

Vaughn was the first to file a Charge of Discrimination with the E.E.O.C. on August 14, 2006, alleging race-based discrimination and retaliation.  (Vaughn Charge, ECF DKT #13 at Plaintiff's Exhibit ("Pl.'s Ex.") 1.)  Vaughn alleged that Defendant restaurant management used racially derogatory words, yelled disrespectfully, swore at him, denied him breaks, and retaliated against him by having his work hours reduced.  (*Id.*)  He also claimed that he resigned as a result.  (*Id.*)  E.E.O.C. notified Defendant of Vaughn's charge the day following its filing.  (Vaughn Notice of Charge, Pl.'s Ex. 2.)

Vaughn did not make any allegations of discrimination or retaliation on behalf of a class of persons similarly situated to him in his charge.  (Vaughn Charge, Pl.'s Ex. 1.)  However, when requesting information for its investigation, E.E.O.C. did inform Defendant's counsel that "Mr. Vaughn indicated that during his employment he and other similarly situated individuals were repeatedly called the "n" word by management officials and were also subjected to racial animus remarks regarding Black individuals."  (Affidavit of Melissa S. Ingalsbe ("Def.'s Aff."), ECF DKT #12 at Collective Ex. B.)  E.E.O.C. requested information from Defendant related to this class of "similarly situated individuals" in three separate requests for information while investigating Vaughn's charge:

    Provide a complete listing of the individuals who worked in the Kitchen with the

>Charging Party. Identify each individual by name, date of hire, position title, whether the individual is still employed with Respondent and home contact information.
>
>Identify if any other individuals have alleged the same issues as indicated in Mr. Vaughn's Charge.
>
>Have other employees complained of race discrimination during their tenure with Respondent?
>
>Please provide the home contact information for all of the individuals listed in Exhibit A of your October 23, 2007, correspondence.
>
>Provide copies of personnel files of all individuals identified in Exhibit A to Respondent's letter dated October 23, 2007.
>
>Provide all documents which reflect all EEO/harassment/diversity training provided to Respondent's workforce, including all individuals in Exhibit A to Respondent's letter of October 23, 2007.

(*Id.*)

On December 10, 2007, E.E.O.C. issued a determination letter finding reasonable cause to believe:

>[T]he evidence reveals Charging Party and a class of similarly situated Black employees were repeatedly subjected to a racially hostile work environment. The evidence also reveals the Respondent failed to inform the employees of a harassment policy either verbally or by postings. The evidence further supports that Charging Party and a class of similarly situated Black employees were denied terms and conditions of employment including the ability to take work breaks. The evidence, however, does not support that the Charging Party's hours were reduced.

(Vaughn Determination, Pl.'s Ex. 3.) The same day, the E.E.O.C. made a conciliation proposal on behalf of Vaughn and an unspecified class of Black employees similarly situated to him. (Proposal for Vaughn, Pl.'s Ex. 11.) Defendant responded to the conciliation proposal on January 10, 2008, making a counter offer of monetary relief for Vaughn but asserting that a class-wide determination was inappropriate because there was not an underlying class-based charge. (Def.'s Aff. at Ex. E.) On January 17, 2008, the E.E.O.C. failed conciliation on

3

Vaughn's Charge of Discrimination because additional employees of the Defendant were filing new charges.  (*Id.* at Ex. H; Pl.'s Ex. 4.)

On January 22, 2008, Graves and Williams each filed a Charge of Discrimination with the E.E.O.C.  (Graves Charge, Pl.'s Ex. 5; Williams Charge, Pl.'s Ex. 7.)  Graves alleged that she "and other Blacks were subjected to different terms and conditions of employment" and that she and "other Blacks were subjected to racial comments and harassment."  (Graves Charge, Pl.'s Ex. 5.)  Specifically, Graves alleged that she and other Blacks "were given more duties . . . than the Whites and Hispanics."  (*Id.*)  Graves also alleged that she and other Black employees complained about the harassment and different terms and conditions of employment but Defendant "was retaliatory to those who complained."  (*Id.*)  Lastly, Graves alleged that she "was compelled to leave [her] employment with [Defendant]."  (*Id.*)  E.E.O.C. sent notice of the charge on the same day to Defendant and requested a position statement addressing the allegations.  (Graves Notice of Charge, Pl.'s Ex. 6.)

Williams alleged that he and other Blacks "have been subjected to different terms and conditions of employment" and "to racial comments and harassment." (Williams Charge, Pl.'s Ex. 7.)  Allegedly, Williams and other Black employees "complained . . . about the harassment and different terms and conditions of employment, but the situation has not been addressed." (*Id.*)  Williams also alleged that Defendant "has been retaliatory to those who have complained." (*Id.*)  E.E.O.C. sent notice of the charge on the same day to Defendant and requested a position statement addressing the allegations.  (Williams Notice of Charge, Pl.'s Ex. 8.)

On June 5, 2008, E.E.O.C. issued a determination letter finding cause to believe that Graves and a class of similarly situated Black employees were repeatedly subjected to a racially

4

hostile work environment, that Defendant had failed to inform employees of a harassment policy, that Graves and a class of similarly situated Black employees were denied equal terms and conditions of employment, and that Graves was constructively discharged.  (Graves Determination, Pl.'s Ex. 9.)  The Graves Determination recounted that Graves had alleged, in part, that Defendant "retaliated against those who have complained."  (*Id.*)  However, E.E.O.C. did not include any findings as to the allegation of retaliation.  (*Id.*)

Likewise, the same day, E.E.O.C. issued a determination letter finding cause to believe that Williams and a class of similarly situated Black employees were repeatedly subjected to a racially hostile work environment, that Defendant had failed to inform employees of a harassment policy, and that Williams and a class of similarly situated Black employees were denied equal terms and conditions of employment.  (Williams Determination, Pl.'s Ex. 10.)  The Williams Determination also recounted that Williams had alleged that Defendant "retaliated against those who have complained."  (*Id.*)  However, E.E.O.C. did not make any findings regarding this allegation of retaliation.  (*Id.*)

Conciliation proposals for these charges were issued to Defendant on June 5, 2008, seeking relief for Graves, Williams, and a class of affected Black employees.  (Proposal for Graves, Pl.'s Ex. 12; Proposal for Williams, Pl.'s Ex. 13.)  Each proposal, including Vaughn's, contained two anti-retaliation provisions.  Under the General Provisions, E.E.O.C. proposed:

> The Parties agree that there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice declared unlawful under any statute administered by the E.E.O.C. or because of the filing of a charge, giving of testimony or assistance or participation in any manner in any investigation, proceeding or hearing under any statute administered by the E.E.O.C..

(Proposals, Pl.'s Ex. 11-13.)  Under the Relief Provision, E.E.O.C. proposed:

5

> Respondent agrees to refrain from retaliation of any kind against Charging Party because of his opposition to any practice declared unlawful under Title VII or because of the filing of a charge, giving of testimony or assistance, or participation in any manner in any investigation, proceeding or hearing under Title VII.

(*Id.*)

While the E.E.O.C. did not make findings of retaliation in the Graves or Williams determinations, a follow-up letter to Defendant's counsel, dated June 26, 2008, explained "that a significant portion of E.E.O.C.'s findings was based on retaliation. Indeed, certain class members have experienced and continue to experience retaliation for complaining of race-based mistreatment." (Pl.'s Ex. 14.) On June 27, 2008, E.E.O.C. advised that they believed that "charges of discrimination may be forthcoming regarding [the retaliation] issue." (Def's Aff. at Ex. Q.)

After numerous communications between the parties, conciliation failed on July 2, 2008. Thereafter, E.E.O.C. filed its Complaint, seeking relief on behalf on Vaughn, Graves, Williams, and a class of Black employees. Defendant now moves for Partial Summary Judgment. For the purposes of this motion, E.E.O.C. concedes that there are no genuine issues of material fact, but denies that Defendant is entitled to judgment as a matter of law. (Plaintiff's Brief in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl.'s Br."), ECF DKT #13 at 6.)

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a Motion for Summary Judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Ciminillo v.* Streicher, 434 F.3d 461, 464 (6th Cir. 2006).

## LAW AND ANALYSIS

The E.E.O.C. has the statutory authority to enforce Title VII against employers by bringing a civil action in federal court.  42 U.S.C. § 2000e-5(f)(1).  However, "the E.E.O.C. is required by law to refrain from commencing a civil action until it has discharged its administrative duties."  *Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 368 (1977). The statutory provisions in 42 U.S.C. § 2000e-5(b) and (f)(1) clearly state that the following prerequisites must be met:

> (1) filing with the Commission of a timely charge of discrimination at least 30 days before the suit is filed; (2) notice of the charge served on the Respondent; (3) an investigation of the charge; (4) a determination by the Commission that reasonable cause exists to believe that the charge is true; (5) an attempt by the E.E.O.C. to eliminate the unlawful employment practices by informal methods of conference, conciliation, and persuasion; and (6) inability of the Commission to secure from the Respondent a conciliation agreement acceptable to the E.E.O.C.

*E.E.O.C. v. Premier Operator Servs., Inc.*, 75 F. Supp. 2d 550, 562 (N.D. Texas 1999); *see also E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 74-81 (1984); *Occidental Life Ins. Co. of Cal.*, 432 U.S. at 359; *E.E.O.C. v. J. Alexander's Rest., Inc.*, No. 3:04-0839, 2005 WL 2338791, at *7 (N.D. Ohio Sept. 23, 2005).

While recent developments in the law indicate that these Title VII procedural requirements may not be considered jurisdictional in the future, the most recent pronouncement of the Sixth Circuit reiterated the well-settled precedent that the requirements must be satisfied for the courts to have subject matter jurisdiction.  *Strous v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (explaining that when Congress does not clearly require a particular element to be a precondition to jurisdiction,

that element will be deemed nonjurisdictional); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400-402 (6th Cir. 2008) ("We now hold, in light of *Arbaugh*, that although administrative exhaustion is still a statutory prerequisite to maintaining claims brought under the ADEA, the prerequisite does not state a limitation of federal courts' subject matter jurisdiction over such claims."); *Bacon v. Honda of America Mfg., Inc.*, 192 Fed. Appx. 337, 341 (6th Cir. 2006) (noting that *Arbaugh* "may require reconsideration of our precedent that administrative exhaustion is a jurisdictional matter rather than an element of a Title VII claim."); *Jacobs v. Roofing Supply of Nashville, LLC*, No. 3:08-00349, 2009 WL 855653, at *6 (M.D. Tenn. Mar. 30, 2009) (finding that the Supreme Court's reasoning in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) that the "timely filing requirement is a precondition because it is listed in a separate section of Title VII than the section that grants jurisdiction to the district courts, is equally applicable to all of the requirements listed in section 2000e-5(f)(1)."). Regardless of whether the requirements are considered jurisdictional prerequisites or conditions precedent to suit, the analysis and result do not change. Following the last definitive pronouncement of the Sixth Circuit, this Court will treat the statutory requirements as jurisdictional prerequisites.

Defendant moves to dismiss certain E.E.O.C. claims, asserting that these claims are not properly before the Court due to alleged procedural deficiencies in the administrative process. Specifically, Defendant argues that (1) "Plaintiff's claims of retaliation must be dismissed as Plaintiff cannot file suit on claims as to which it did not find cause," (2) "Plaintiff failed to satisfy statutory conditions precedent to suit and/or exhaust administrative remedies by failing to give charge notice of and to investigate alleged discriminatory 'terms and conditions of employment,'" and (3) "E.E.O.C.'s alleged claims of class-wide denial of breaks and retaliatory

reduction of hours must be dismissed because there is no underlying class charge." (Defendant's Brief in Support of Motion for Partial Summary Judgment ("Def.'s Br."), ECF DKT #12 at 7, 11, 17.)

**I.     The E.E.O.C.'s Failure to Make a Reasonable Cause Determination Regarding Its Retaliation Claims Entitles Defendant to Summary Judgment on These Claims.**

Because the E.E.O.C. failed to satisfy the requirement of finding reasonable cause to believe that retaliation had occurred, this Court lacks subject matter jurisdiction over these claims.

The Sixth Circuit does not require a rigidly formalistic recitation of each claim in E.E.O.C. determination letters. *E.E.O.C. v. McCall Printing Corp.*, 633 F.2d 1232, 1236-37 (6th Cir. 1980). In *McCall Printing*, the E.E.O.C. brought a racial discrimination action on behalf of a group of black employees in which one claim was based, in part, on a recent E.E.O.C. conciliation agreement between the employer and a group of female employees. *Id.* at 1234. The charges "expressed a sincere hope to join the female employees in receiving full seniority;" but, while the E.E.O.C. found reasonable cause of discrimination, the determination letter did not state that the finding was based on the female employees' conciliation agreement nor did it contain any reference to that agreement. *Id.* at 1235-36. Because the conciliation agreement was the only complained-of action of the employer that was not time-barred, the E.E.O.C. asserted a discrimination claim at trial based solely on the agreement. *Id.* at 1234-35. The district court granted summary judgment in favor of the employer on this claim because the determination letter contained no reference to the female employees' conciliation agreement and alternatively, because this conciliation agreement could not form the basis of a valid Title VII action. *Id.* at 1235, 1237.

The Sixth Circuit disagreed with the district court on the determination letter issue but upheld summary judgment on the alternative ground. *Id.* at 1236-37. The Sixth Circuit reasoned:

> It is clear that the recitation of a claim in the determination letter is not a prerequisite to the assertion of such claim by a private litigant. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). This Court has not been presented with a sufficient justification for applying a different rule with regard to claims made by the E.E.O.C. We therefore decline to hold that the recitation of each claim of discrimination in the E.E.O.C.'s letter of determination is a rigid prerequisite to the assertion of those claims by the E.E.O.C. at trial.

*Id.* at 1236. The Court explained that the "[t]wo principal purposes of the determination letter are to notify the employer of the [E.E.O.C.'s] findings and to provide a common ground for conciliation" and that "[n]either of these purposes have been undermined in the instant case." *Id.* Furthermore, "the purposes of the determination letter . . . can be served through a requirement that the basic substance of the claim be contained therein." *Id.* at 1237. The Court declined "to require that all theories be set out in the reasonable cause determination," in part, because "[s]uch a rule would have the effect of treating a determination letter with greater formality than that attached to a pleading." *Id.* at 1236-37.

*McCall Printing* is the extent of Sixth Circuit jurisprudence on this issue; it appears that no courts within the Circuit have since addressed it. Other courts considering this issue have taken a seemingly stricter approach to determination letter requirements. *See E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963 (7th Cir. 1996) (affirming summary judgment against the E.E.O.C. on a claim without a reasonable cause determination); *E.E.O.C. v. Hearst Corp., Seattle Post-Intelligencer Div.*, 553 F.2d 579, 580 (9th Cir. 1977) ("[T]he original charge is sufficient to support . . . an E.E.O.C. civil suit . . . for any discrimination stated in the charge

itself or discovered in the course of a reasonable investigation of that charge, provided such additional discrimination was included in the E.E.O.C. 'reasonable cause' determination and was followed by compliance with the conciliation procedures of the Act."); *E.E.O.C. v. General Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976) (same); *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 668-69 (8th Cir. 1992) (same); *E.E.O.C. v. American Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981) ("[W]e require that a particular charge of discrimination be the subject of the reasonable cause determination and conciliation before being subject to suit by the E.E.O.C."); *E.E.O.C. v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) ("The Commission's functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII. It is difficult to believe that Congress directed the Commission to make a determination of reasonable cause on the merits of a charge and nevertheless contemplated that the Commission could institute such litigation before it makes such a determination.") (quoting *E.E.O.C. v. E. I. DuPont de Nemours & Co.*, 373 F. Supp. 1321, 1333 (D. Del. 1974), *aff'd on other grounds*, 516 F.2d 1297 (3rd Cir. 1975)); *E.E.O.C. v. United Parcel Serv., Inc.*, No. 90 C 3862, 1992 WL 345061, at *1-2 (N.D. Ill. Nov. 12, 1992) ("The E.E.O.C. lacks authority to bring suit on any charge for which it has failed to make a positive reasonable cause determination and attempt conciliation between the employer and employees . . . It would be pointless to require the E.E.O.C. to make a reasonable cause finding in its Letter of Determination, then ignore it by filing suit over anything mentioned in the Letter."); *E.E.O.C. v. American Home Products Corp.*, 165 F. Supp. 2d 886 (N.D. Iowa 2001) ("Here, the E.E.O.C. found reasonable cause as to only *one* practice, retaliatory termination. The E.E.O.C. cannot 'parlay' that reasonable cause determination into satisfaction of the prerequisites for suit with regard to *other* practices,

involving post-termination retaliation, without a separate 'reasonable cause' determination as to the additional allegations of retaliation.") (emphasis in original).

The Sixth Circuit's requirement that the "basic substance of the claim" be contained in the determination letter is actually in line with the outside authority, *supra*. *See McCall Printing Corp.*, 633 F.2d at 1237.  In *McCall Printing*, the determination letter did notify the employer that the E.E.O.C. had found reasonable cause to believe that racial discrimination had occurred, but the letter did not further explain that the female employees' conciliation agreement was the basis for that finding.  The Sixth Circuit stated that "the recitation of *each claim of discrimination* in the E.E.O.C.'s letter of determination is [not] a rigid prerequisite to the assertion of those claims by the E.E.O.C. at trial." *Id.* at 1236 (emphasis added).  A fair reading of this statement, in light of the facts of this case, suggests that the E.E.O.C. need not make explicit findings on each distinct act of the same type of discrimination.  It would not be a rigid prerequisite to require the E.E.O.C. to make determinations for different types of prohibited conduct: racial discrimination, sex discrimination, retaliation, etc.  In other words, the E.E.O.C. is not required to provide a detailed explanation of the factual basis or specific theory of legal liability in the determination letter.  The letter should not be treated "with greater formality than that attached to a pleading." *Id.* at 1236-37.  By no means did the Sixth Circuit completely abrogate the statutory requirement that the E.E.O.C. make reasonable cause determinations before bringing an action in federal court; this is far too broad a reading.

Here, Vaughn, Graves, and Williams each alleged retaliation in their charges filed with the E.E.O.C.  (Vaughn Charge, Pl.'s Ex. 1; Graves Charge, Pl.'s Ex. 5; Williams Charge, Pl.'s 7.)  With respect to Vaughn's charge, the E.E.O.C. determination letter specifically found no

cause to believe that retaliation had occurred.  (Vaughn Determination, Pl.'s Ex. 3.)  With respect to the other two charges, the determination letters did not include any findings of retaliation.  (Graves Determination, Pl.'s Ex. 9; Williams Determination, Pl.'s Ex. 10.)

Because these latter two determination letters did not include any findings regarding retaliation, the first purpose of the statutorily mandated determination letter has been undermined in this case.  Obviously, the purpose of notifying the employer of the E.E.O.C.'s findings cannot possibly be achieved when the E.E.O.C. fails to include any findings on a particular claim.  The E.E.O.C. in *McCall Printing* satisfied its statutory duty by simply stating in its determination letter that it had reasonable cause to believe that racial discrimination had occurred; the E.E.O.C. did not have to explain that this determination was based on a previous conciliation agreement with the employer, especially since this was clear from the charges.  This was sufficient to meet the "requirement that the basic substance of the claim be contained" in the determination letter. *McCall Printing Corp.*, 633 F.2d at 1237.  Applying this principle here, the E.E.O.C. simply had to state that it found reasonable cause to believe that retaliation had occurred.  Reasonable cause determinations of subjection to a racially hostile work environment and denial of equal terms and conditions of employment did not put Defendant on notice of determinations of retaliation, a completely distinct claim.  (*See* Graves Determination, Pl.'s Ex. 9; Williams Determination, Pl.'s Ex. 10.)  These positive determinations do not contain the "basic substance" of a retaliation claim.  As such, the E.E.O.C.'s claims of retaliation must be dismissed for failure to satisfy the jurisdictional prerequisite of making a reasonable cause determination.  42 U.S.C. § 2000e-5(b).

The E.E.O.C. argues that the Defendant was placed on notice because the Graves' and Williams' determination letters recounted that retaliation had been alleged.  (*Id.*)  Restating the

allegations without making a determination certainly does not "notify the employer of the [E.E.O.C.'s] findings" and is insufficient to satisfy the "basic substance" requirement.  *See McCall Printing*, 633 F.2d at 1236.  Additionally, the E.E.O.C. argues that notice of the retaliation claim was given to the Defendant in a follow-up letter, dated June 26, 2008, which explained "that a significant portion of E.E.O.C.'s findings was based on retaliation."  (Pl.'s Ex. 14.)  This form of notice, however, does not comply with the statutory scheme.  *See* 42 U.S.C. § 2000e-5(b).  The E.E.O.C. did not satisfy the jurisdictional prerequisites to its retaliation claims and its characterization of fulfilling these requirements as "needless administrative work" defeats the statutory mandate of attempting to conciliate Title VII violations before bringing suit in federal court.

For the foregoing reasons, Defendant is entitled to summary judgment on the E.E.O.C.'s retaliation claims.  This Court is deprived of subject matter jurisdiction over these claims because of the E.E.O.C.'s failure to make a positive reasonable cause determination.

**II.** **The E.E.O.C. May Pursue Its Claims of Discriminatory Terms and Conditions of Employment That Were Not Specifically Raised in the Charges Because The Claims Could Reasonably Be Expected to Grow Out of the Charges.**

"The clearly stated rule in [the Sixth] Circuit is that the E.E.O.C.'s complaint is limited to the scope of the E.E.O.C. investigation reasonably expected to grow out of the charge of discrimination."  *E.E.O.C. v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977) (internal quotations omitted); *accord E.E.O.C. v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980).  *Bailey* involved a Title VII action in which the E.E.O.C. expanded the initial charges of sex and race discrimination to include religious discrimination.  Even though the E.E.O.C. discovered this discrimination in its investigation, the Sixth Circuit ruled that the E.E.O.C. could not add the

religious discrimination claim to the complaint because "forms of employment discrimination involving race, religion, sex, and national origin are not so related" that an E.E.O.C. investigation of one form of discrimination can reasonably be expected to grow into an investigation of a different form of discrimination. *Id.* at 451.

Here, the E.E.O.C.'s action is premised on three charges: Vaughn's ("I was denied breaks, Management officials would use racially derogatory words and treat me in a disrespectful manner by yelling and swearing at me") (Pl.'s Ex. 1), Graves' ("I and other Blacks were subjected to different terms and conditions of employment . . . I and other Blacks were subjected to racial comments and harassment") (Pl.'s Ex. 5), and Williams' ("I and other Blacks have been subjected to different terms and conditions of employment. Also, during my employment, I and other Blacks have been subjected to racial comments and harassment") (Pl.'s Ex. 7.) The only specific terms and conditions of employment mentioned in the charges related to breaks and work assignments. (Pl.'s Ex. 1, 5, 7.) Defendant argues that the E.E.O.C.'s class-wide terms and conditions claim - which includes matters such as the denial of breaks, food, leave, job advancement, and equal application of work assignments, attendance and tardiness rules - cannot proceed because each term and condition, except breaks and work assignments, was not specifically enumerated in the charges.

However, Defendant cites no authority in support of its proposition that the phrase "different terms and conditions of employment" in charges or determination letters is impermissibly vague. In fact, one court within the Sixth Circuit recently found that the phrase "different terms and conditions of employment" in a plaintiff's charge "would prompt the E.E.O.C. to consider any of the terms and conditions of her employment . . . ." *Schneidt v. J.P.*

15

*Morgan Chase Bank, N.A.*, No. 06-423-JMH, 2007 WL 4328034, at *2 (E.D. Ky. December 10, 2007). All of the discriminatory terms and conditions of employment here are based on racial discrimination, not different "forms of discrimination" such as sex or religious discrimination as in *Bailey*. Therefore, the specific terms and conditions in the E.E.O.C.'s Complaint are within the scope of the E.E.O.C.'s investigation reasonably expected to grow out of the charges that Defendant's Black employees were subjected to different terms and conditions of employment. *See also E.E.O.C. v. Jacksonville Shipyards, Inc.*, 696 F.Supp. 1438, 1444 (M.D. Fla. 1988) (E.E.O.C. complaint alleging "unequal terms and conditions" with respect to issues of promotion was sufficient to put employer on notice of ancillary claims relating to job assignments, discipline, and hostile work environment); *E.E.O.C. v. Procter & Gamble Mfg. Co.*, No. N-76-1818, 1979 WL 296, at *2 (D. Md. Jan. 3, 1979) (finding that charges of discrimination in the areas of discipline and discharge, while not specifically set forth in the determination letter or judicial complaint, were encompassed by the phrase "terms and conditions of employment").

Finally, Defendant's argument challenging the adequacy, or even existence, of the E.E.O.C.'s investigation into the discriminatory terms and conditions of employment lacks merit and does not even cite to any supporting authority. The Sixth Circuit has stated that it is an "error for the district court to inquire into the sufficiency of the [E.E.O.C.'s] investigation . . . The nature and extent of an E.E.O.C. investigation into a discrimination claim is a matter within the discretion of that agency." *E.E.O.C. v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984).

In sum, Defendant's argument that particular terms and conditions of employment must be specifically enumerated in charges or notices of charges lacks legal support. Thus, E.E.O.C.

satisfied the jurisdictional prerequisites to bringing its terms and conditions claims.

**III.    The E.E.O.C.'s Claim of Class-Wide Denial of Breaks Is Properly Before This Court As It Could Reasonably Have Been Expected to Grow Out of the Charging Party's Individual Charge of Discrimination.**

Defendant argues that E.E.O.C.'s claims of class-wide denial of breaks and retaliatory reduction of hours must be dismissed for lack of an underlying class charge.  This Court lacks subject matter jurisdiction over the E.E.O.C.'s claims of retaliation because of the E.E.O.C.'s failure to make any findings regarding retaliation in its letter of determination.  Defendant's argument as to the class-wide denial of breaks claim, however, is not supported by any relevant case law.

The ability of the E.E.O.C. to maintain a class-wide action is not dependent on an underlying class charge.  Instead, the class-based claim must have been reasonably expected to grow out of an individual charge of discrimination:

> [T]he E.E.O.C. has merely broadened the scope of [the individual's] charge by alleging that [the defendant] has engaged in sexual discrimination against all of its female employees in its assembly division.  Consequently, the only difference between the E.E.O.C.'s later charge and [the individual's] initial charge is the number of persons victimized by [the defendant's] allegedly discriminatory practices.  As this later class-based claim brought by the E.E.O.C. could have reasonably been expected to grow out of [the charging party's] individual complaint of discrimination, no new additional proceedings were necessary.

*E.E.O.C. v. Keco Industries, Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984); *see also E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996) ("[E.E.O.C.] may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties who are identified during the

17

investigation."). Furthermore, the E.E.O.C. need not obtain class certification to bring an action on behalf of a class of unidentified individuals and is not bound by Rule 23 of the Federal Rules of Civil Procedure as is a private Title VII class action litigant. *General Tel. Co. of the Northwest, Inc. V. E.E.O.C.*, 446 U.S. 318, 323 (1980); *United Parcel Serv.*, 94 F.3d at 318.

Here, Defendant relies on cases that involve private plaintiffs attempting to expand an individual charge into a class lawsuit or otherwise invoke Rule 23, such as *Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132 (E.D. Mich. 2002) and *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124) (7th Cir. 1989).  These cases are simply inapposite to an E.E.O.C. class action.  As in *Keco*, the E.E.O.C.'s claim of class-wide denial of breaks reasonably grew out of Vaughn's charge of denial of breaks. While Vaughn did not make any allegations of discrimination on behalf of others, Vaughn indicated during the investigation the occurrence of discriminatory conduct targeted against similarly situated individuals.  (Def.'s Aff. at Collective Ex. B.)  The E.E.O.C. requested information from Defendant regarding these individuals as well.  (*Id.*)  Defendant cannot argue that it was not put on notice of the class-wide nature of this claim as the determination letter clearly stated that the "evidence further supports that Charging Party and a class of similarly situated Black employees were denied terms and conditions of employment including the ability to take work breaks.  (Vaughn Determination, Pl.'s Ex. 3.)  Furthermore, this claim can also reasonably be said to have grown out of the two other individuals *charging* discriminatory terms and conditions of employment on behalf of themselves *and other Black employees*.  For these reasons, Defendant's argument is without merit.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is granted

in part and denied in part.  Because the E.E.O.C. failed to make a reasonable cause determination regarding the allegations of retaliation, this Court lacks subject matter jurisdiction over these claims.  All other E.E.O.C. claims are properly before the Court.

**IT IS SO ORDERED.**

**DATE: July 16, 2009**              <u>**s/ Christopher A. Boyko**</u>
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**